The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Good afternoon. Thank you to Council for joining us by videoconference for this session. Madam Clerk, please call the case for argument. Case number 19-29-10, Western Missouri and 19-30-19, Western Missouri. Norman Brown et al. v. Anne Precythe et al. Very well. Mr. Crane, we'll hear from you first. Thank you, Judge Carlton, and may it please the Court. This Court should not radically expand the 8th Amendment to allow federal courts to rewrite state's parole procedures, even in narrow cases like these. To put in context how dramatic the District Court's departure from case law is, the District Court was interpreting Miller, Montgomery, and Graham, cases which are about applying the cruel and unusual punishment clause at sentencing for juvenile offenders facing life without parole punishments. But in the parole proceedings reviewed by the District Court, there was no punishment, no sentencing, no juveniles, and no life without parole. Counsel, could I ask you a preliminary question, please? Is there a procedure in Missouri for resentencing these plaintiffs for these kinds of offenses? There's no procedure for resentencing them unless they were to successfully challenge their sentences in habeas corpus. Okay, but there is a resentencing procedure. Sorry, Your Honor, but only if they were able to succeed in habeas corpus. That said, Missouri courts have found that given the legislative remedy provided to these inmates, they don't have a valid claim against their sentences any longer. So there's no way I know that they could. Okay, thank you. Thank you. These inmates are facing normal parole review, or they were at the time of the record. Just like any other inmate, they were given regular parole proceedings. They were allowed to converse with the parole board, answer their questions, submit evidence, and the parole board considered a normal scope of factors. But in order to apply Miller and Montgomery to that situation, this court would have to expand those cases in two major ways. This court would have to apply, for the first time, Miller to parole-eligible offenders, and this court would have to, for the first time, apply Miller to apply in cases about parole procedures. And that would be the first time the Eighth Amendment's ever been applied in that context. In fact, in our brief, we cited a long-string site on page 36 that the Eighth Amendment simply doesn't have any application to the procedure states use in parole proceedings. There's nothing in Miller, Montgomery, or Graham that would change that. Miller, Montgomery, and Graham all assume that parole review under a state's normal procedures is a meaningful opportunity for release, and that's further demonstrated by a Supreme Court's decision in Virginia v. LeBlanc. Virginia v. LeBlanc decided that Virginia could use a geriatric parole system to provide parole review to its juvenile offenders. And Justice Ginsburg, concurring, wrote that she assumed that these procedures were all right because Virginia applied its normal parole procedures, which allowed for the consideration of various factors, including maturity and rehabilitation. That's exactly the type of opportunity that Miller, Montgomery, and Graham were talking about when they said that states couldn't deny at the outset juveniles any chance for release ever. But Missouri has not done that. Missouri's provided every Miller offender in that class parole eligibility, which continues in review periodically, even if offenders are denied release after their first hearing. The record is clear that all the offenders were rescheduled for more parole review within five years at least. Could be sooner, but at least within five years, another parole hearing is held. There's simply no applicability of Miller, Montgomery, and Graham to that situation, and the Fourth Circuit recently held just that. In a very similar case on the same situation, in Boling v. Virginia Director of Corrections, the Fourth Circuit held that Miller does not apply to offenders who have parole eligibility currently. And that's simply no argument in the record that these offenders are not eligible for parole. Mr. Crane, as I understand it, the factors that were discussed in Miller and later Montgomery about how children are constitutionally different than adults when they are offenders pre-18, how do we take into account the fact that those factors, as I understand it, have never in particular been addressed by either a sentencing court or a parole board? Your Honor, those factors that the Supreme Court listed in Miller are constitutionally factors that are relevant for a court to consider before sentencing an offender to life without parole. The reason that it's not important to concern those factors in Missouri's parole process necessarily, constitutionally, is because these offenders can never be sentenced to life without parole. They'll always have continuing parole eligibility, and the parole board's not considering whether to shut them off from their eligibility ever. Those factors are relevant in deciding whether to take away forever a juvenile's chance of release at the time they're sentenced. These juveniles, these offenders in this case, no longer juveniles, are simply not facing that possibility any longer. So it's your position that those factors just aren't relevant, that these individuals are no different than any other parole-eligible inmate, even in spite of Miller and Montgomery? Now, that's my position, that the Constitution, those factors are no longer constitutionally relevant to these offenders. They are relevant from terms of a policy decision. Should we release them on parole? That is something that the parole board should consider, and in fact, Missouri law requires the parole board to consider those factors in cases like this, and in the summary judgment decision, the district court found that Missouri's procedures allow the board to consider those factors. In denying the inmates' state law claims, the district court found that the board can consider those factors in its parole review. Why wouldn't that be enough, even if it's not required then? The availability, why wouldn't that satisfy an expansive view of what Miller said and Montgomery? Yeah, and we've argued in our brief that even if courts or parole boards are required to allow those factors to be considered, as Justice Ginsburg's concurrent in Virginia versus LeBlanc suggests, the Missouri process does allow for that. Now, the district court believed that additional procedures were necessary to ensure that the review was meaningful in the district court's opinion, but that is not the question posed by Miller, Montgomery, and Graham. The question is, has Missouri taken away forever the possibility that these inmates will be paroled, and that there's simply no support for that idea on the record. Even on their first hearing for first-degree murder, their first parole hearing, 16% of the offenders were released after their first hearing. So there's really no argument that they had no chance at parole, that Missouri wouldn't consider any information about them, whether they've matured, their process in prison, what they've gone through in their lives since their crime. There's no argument in the record that Missouri's parole process doesn't allow the board to consider that. It absolutely does, and the board was considering it. The district court did rely heavily on this meaningful opportunity. Can you address that? Why is the district court wrong in your view that there maybe was some opportunity, but maybe not a meaningful opportunity to show the rehabilitation and maturity? Right. Thank you, Your Honor. It's important to consider the words meaningful opportunity in the context they were in, in Miller, Montgomery, and Graham. That is, at sentencing, will there be another meaningful opportunity for this person to be released? If you sentence them to life without parole at sentencing, obviously there will never be any opportunity. Now, the question is, does Missouri provide them with some opportunity after that to be released? And that answer must be yes. Missouri allows continuing eligibility for parole after 25 years. But that in itself is the meaningful opportunity for release that Miller, Montgomery, and Graham were talking about. Expanding on that. I'm wondering, is there a difference between meaningful opportunity and just a regular or more standard parole review? I'm wondering whether your view is that the court was mindful in its choice of words that it could have said, you're going to get a parole proceeding later, but it said meaningful opportunity for this opportunity to demonstrate this maturity and rehabilitation. Is that a difference that we should be considering? I think that meaningful opportunity for release is used there to say things like clemency. Extraordinary opportunity for release are not sufficient. Now, any juvenile sentence to life without parole could, of course, be granted executive clemency in the extraordinary case under any state's circumstance. But I think the Supreme Court was suggesting that wouldn't be enough. But if you look at Miller, Montgomery, and Graham, they give no pronouncement for offenders of any age who are simply sentenced to life sentences with parole eligibility. So meaningful opportunity for release had to include parole. And Montgomery makes that clear by saying explicitly states can remedy a Miller violation by extending parole to offenders, not by changing their parole process to provide an entirely different kind of review, by extending them parole eligibility. That's a remedy explicitly authorized by the Supreme Court. And that's what Missouri chose to do here. And that was Missouri's option. Montgomery gave states the option of how to remedy Miller violations. And the inmates would like to take that choice for themselves and make both. They'd like all the procedural safeguards that would have applied if Missouri had tried to resentence them and put the possibility of life without parole back on the table. All those procedural safeguards, they want those to apply now, even though they've already gotten the parole eligibility that Missouri extended to them. So they rejected the choice Missouri made, and they would like both now. They would like a parole eligibility continuing without the chance that they would face life without parole again, and all the procedural safeguards that they would have at a Miller sentencing. Simply not the inmates option. The Constitution doesn't require that. Mr. Crane, what's the state's position on whether this is a proper 1983 action as opposed to something that should be raised in a habeas proceeding? That's difficult to say. It's been complicated by the briefing. So there are cases, Supreme Court cases, that suggest a 1983 suit simply to challenge the procedures being used in a parole process would be proper, and I don't dispute that. But the inmates have in their brief suggested that they can prevail because their sentences are invalid under Miller. There's a Miller sentencing error, which means that the Supreme Court's due process case law doesn't apply to them because their sentences are invalid. Therefore, they could prevail under that theory. Their sentences are not invalid as a matter of law, and this court can't invalidate them in this action because Priester v. Rodriguez says that challenging the validity of a sentence or a sentence of imprisonment and conviction is the heart of habeas review, and there are strict rules that limit what kind of habeas review and relief this court could grant, as Virginia v. LeBlanc demonstrates. Well, if the plaintiffs have not been given what they claim is a meaningful opportunity for parole or for release, then are they saying that their sentences are invalid because the Miller error has not been remedied? That's a claim they could make, but as you suggested, not in this form of action. So if they believe that Missouri's process has not remedied their sentences, they could file for individual collateral review. And in fact, many inmates in this class did. They sought habeas review in district courts, alleging that Missouri's legislative fix did not remedy their sentences and that they were entitled to habeas relief. None of those claims have been successful in this circuit, and indeed, different standards apply in those habeas actions, and those standards must apply if this court considers invalidating the inmates' sentences. It's required to apply the standards that exist under 2254D. That's how the law is intended, and it preserves the comity and finality, the balance between state and federal courts. So the inmates have never argued in their complaint that their sentences were invalid. They simply argued that Miller and Montgomery extend to them some sort of procedural right, a right to meaningful procedures, and that they should have those during parole proceedings. In their briefing, they did suggest that their sentences are invalid. That's not a claim they can make here, but I don't consider it to really be at issue. The claims at issue are whether Miller, Montgomery, and Graham have extended some sort of right to them that gives them independent rights to procedures at parole proceedings. And if Miller, Montgomery, and Graham were going to overrule decades and decades of Eighth Amendment and due process case law and extend those kinds of rights to parole proceedings, I think they would have said so. And Virginia v. LeBlanc specifically says that Miller, Montgomery, and Graham say nothing about what type of parole process is required by the Eighth Amendment, or if any is. They just say that parole eligibility under those cases was a fix, and geriatric parole eligibility, as used in Virginia, is a fix. It's a remedy for a Miller violation. I think that the most important thing to recognize here is that the burden is to overcome the decades of case law that say the Eighth Amendment doesn't apply in parole proceedings and the due process clause doesn't give you any right to particular parole procedures. And you have to find something in Miller, Montgomery, and Graham that overrules those decades of case law. But Miller, Montgomery, and Graham go out of their way to say that states don't have to guarantee inmates a right to release or some sort of release. And that's what the due process clause would protect if there were a right here. If there were some way they could show they are entitled to absolute release, the due process clause would apply to protect that. But Graham says that states don't ever have to guarantee eventual release to a juvenile offender. They just have to give them an opportunity to be heard and to argue for their rights. It seems to indicate that they think that the occasions where the juvenile would lose would be rare on either resentencing or parole review. I wonder if that doesn't create some sort of presumption, some sort of thumb on the scale in favor of a person in this position, an inmate in this position, that what it doesn't guarantee release creates a kind of legal right to a presumption that if, for instance, the Parole Board does indeed believe there's been rehabilitation, then there's an entitlement to a parole date to be set. That kind of presumption would be a departure from the Eighth Amendment case law and the due process case law that's come down from this court and the Supreme Court. I'm suggesting there's language in the cases. It seems to indicate that there's an expectation. Maybe this was just hortatory language or aspirational, but there's a kind of expectation of relief in cases in which juveniles were sentenced to life, mandatory life without parole. I'm not sure that issue has actually been directly addressed in the briefs, but it strikes me reading these cases is that at the very least, the Supreme Court was saying that parole leaves, that people who seek relief through the parole process need to be outfitted with something very much like the procedures that are available in a resentencing hearing. I think that the language you're talking about, that it will be rare for a juvenile to ever be sentenced to LWOP, I think that is true at sentencing and still should be. In fact, in Missouri, because we chose the legislative fix, there were none. No juveniles affected by Miller were sentenced to life without parole, so that's certainly held true. But there is no language in Miller, Montgomery, or Graham that says it will be rare that no one will ever get eventual parole release or how long it will be before they eventually get it. And there are also no facts in this case that the plaintiffs would not have gotten eventual parole release at a high rate. Indeed, after their first hearing, a significant number of them, 16% were released. Missouri's parole process generally, even for violent offenders, releases a very high rate of offenders before they complete their sentences. So there's no evidence to suggest that that wouldn't hold true here. I'm sorry, go ahead, Judge Kelly. No, no, go right ahead, Judge Arnold. No, please. I just had a quick, just a question about the numbers. You said 16% had been released. Was that, have they been released, or was that there was a date set for a release in the future? Yes, you're right. Schedule for release is what I meant. Some of them have now been released, not all of them. All right. With that, I'll save the rest of my time for rebuttal. Thank you. Well, wait a minute. Let's see if Judge Arnold wanted to finish his question. He deferred to Judge Kelly. No, that's quite all right. Thank you. All right. All right, then, Mr. Crane, you may reserve the balance of your time for rebuttal. Ms. Bryan, we'll hear from you. Thank you, Your Honor, and good afternoon. May it please the court. It is uncontested that the sentences originally imposed on these 98 juvenile class members are unconstitutional in violation of the Eighth Amendment. In Montgomery, the Supreme Court gave states the opportunity to cure those unconstitutional sentences by offering Miller-impacted people the opportunity for parole release. Under Graham and Miller, that is a cure for the constitutional violation if and only if the opportunity for release is meaningful, realistic, and based on demonstrated maturity and rehabilitation. The district court found for several reasons that Missouri's parole review process does not provide that meaningful opportunity, and the state hardly tries to defend that at all. It does not address in its briefing, for example, the six specific due process deficiencies identified in the juvenile classes opening brief. Ms. Bryan, let me ask you this. If you're saying, then, that the state has not adequately remedied the Miller violation, why shouldn't this be a habeas proceeding by each individual class member alleging that the sentence is unlawful? Well, Judge Colleton, as my friend Mr. Crane pointed out, there were habeas petitions brought by most, if not all, of the juvenile class members which were unsuccessful, and the Missouri Supreme Court pointed the class to Senate Bill 590 as a remedy, a quote-unquote Miller fix for their unconstitutional sentences. In this class action, the juvenile class members are not challenging the fact or duration of their confinement, but they are challenging the constitutional adequacy of the opportunity for release that is afforded them through Missouri's standard parole review process. But I thought you just said that Miller and Montgomery provided that the state could remedy the violation by granting a meaningful opportunity for release, and the state here has failed to do so. And so I'm wondering why this isn't just an effort to bring a habeas proceeding in a 1983 proceeding. Well, this case is not just about, first of all, the relief that's sought in this class action was not to secure the relief of the juvenile class members or even a specific percentage of the juvenile class members. It was ensuring that they had a meaningful opportunity to make the case for release, to demonstrate that they had grown and matured, and that they demonstrate Miller's central intuition, which is that even juvenile offenders who commit very serious crimes are capable of growth and maturity. And so it might be that the percentage of grant rates doesn't change significantly with a new process in place, but what's important is that the procedure in place ensures that Miller's substantive right is afforded to the class members. And when the Supreme Court suggested in Montgomery that the opportunity for parole might be one way in which a state might remedy a Miller fix, it could not have had in mind Missouri's standard parole review process, where the juvenile class members receive bare-bones boilerplate notices that don't even pretend to consider Miller factors, where class members are routinely denied access to the parole file, which forms the basis for board decisions, including the very critical pre-hearing report, and where class members have very limited opportunity to offer evidence and advocacy on their own behalf, where board members make determinations based on subjective criteria, where the board is quite simply overwhelmed in its workload, and where the focus is on the circumstances, the facts of the offense, as opposed to the juvenile's rehabilitation and maturity. Now, the question presented is whether this arbitrary and secretive parole review process that provides only a remote possibility of release and essentially ignores youth and rehabilitation along the way complies with the Supreme Court's clear mandate that children be given a meaningful opportunity for release based on demonstrated maturity and rehabilitation. The answer, clearly, is no. And, Your Honor, Judge Carlton, the district court dealt with this argument from the state that this is a habeas action in 1983 clothing and rejected that argument. In fact, that was briefed in the motion to dismiss below and at the summary judgment stage as well. Well, so then, just bottom line, do you say that the state has remedied the Miller violation or not? If, in fact, it affords a meaningful opportunity for release for the class based on demonstrated maturity and rehabilitation, then yes. But, absent that, Montgomery has said that there is a serious risk that the vast majority of juvenile offenders are being held in contravention of the Eighth Amendment. Now, my question is, as to these class members, do you say that the state has remedied the Miller violation or it has not? No, it has not until it has ensured a meaningful opportunity is afforded to the juvenile class. The juvenile class has certain rights in the parole review process that is not afforded to the typical adult offender because they have a liberty interest and a meaningful opportunity for parole release. And, when the Supreme Court has considered parole release, especially in the juvenile context, it has always focused on growth and maturity. In Graham v. Florida, the Supreme Court concluded that mandatory life without parole sentences are unconstitutional because they deny the juvenile offender the chance to demonstrate growth and maturity. And, underpinning the Miller decision was the same proposition, that mandatory sentences preclude consideration of the mitigating qualities of youth, including lessened culpability and greater capacity for change. Ms. Bryan, why isn't this then, why aren't Miller and Montgomery just about mandatory life without parole sentences? Well, Judge Kelly, as you pointed out, these 98 class members did receive mandatory life without parole sentences. And so, a sentencer never had the opportunity to hear evidence regarding the mitigating qualities of their youth. They never had the meaningful opportunity to present that evidence even at their parole hearing for those who have had parole hearings. What about if they, why doesn't then, if it is about, the focus is on mandatory and they got then life without, I'm sorry, well, life with parole, why doesn't that cure it? You say they didn't have an opportunity to present the evidence about youth and all of the attending characteristics of youth at the sentencing. But, if they ultimately got life with parole, why isn't that the remedy? This is not a case where Miller-impacted juveniles were resentenced to life with parole. And so, it's distinguishable from other states that did choose that remedy, for example, Pennsylvania or Michigan. And indeed, some lower courts have applied Graham and Miller's edict to the parole review context, even for juveniles serving life with parole. But, the court needn't go that far to affirm the district court's order here, because the juvenile class was not resentenced to life with parole. They're still serving mandatory life without parole sentences. And where the responsibility for affording a meaningful opportunity for release lies with the parole board, the parole board must comply with Graham and Miller in meeting out that remedy. The parole board has no more rights to ignore Graham and Miller Montgomery than does the Missouri legislature or this court. In its line of cases around extreme sentencing of youth, whenever the Supreme Court has talked about, discussed the opportunity for release that must be afforded to juvenile offenders, serving life sentences, that opportunity has always centered around the particular consideration of the unique characteristics of youth and children's capacity for growth and change. Logic dictates that these same considerations be the focus, whether the inmate receives a Miller resentencing in the court of law or, as in Missouri, a parole hearing offered as a purported Miller fix. Indeed, Graham acknowledged that rehabilitation is a penological goal that forms the basis of parole systems. And nearly 50 years ago in the Morrissey decision, the Supreme Court held at page 478 that the purpose of parole is to help individuals reintegrate into society as constructive individuals as soon as they are able. And thus, not only must this opportunity for release focus on youth maturity and rehabilitation, it must be realistic. As Graham noted at page 70, a remote possibility of release does not mitigate the harshness of a life without parole sentence. What if Missouri would have resentenced them? What if they would have gotten a full resentencing? Would that have been a cure? And that then would have resulted in parole hearings that looked like everyone else's parole hearing or an adult offender's parole hearing? There are a number of cases cited in the briefing, Judge Kelly, where district courts and state courts did apply Miller and Graham to context where juveniles were serving parolable life sentences. Either they went through a resentencing, as your hypothetical suggests, or otherwise they're serving life with parole, and it's still held that the parole boards must comply with Miller and Montgomery. Again, this court doesn't have to go that far in order to affirm the district court's order because the juvenile class has not been resentenced, but that would certainly be a different case. If the class had the opportunity in a court of law to present evidence regarding the mitigating qualities of youth and their growth and maturity over time, it would be a very different case where here, the juvenile class has never had that opportunity. Suppose, counsel, that the state of Missouri had commuted all these sentences to life with parole. Would that have cured the Miller difficulty? Well, I think the state's argument is that that's basically what the state did here. But that's not actually what it did, as I understand it. Is that correct? That's correct, your honor. Thank you. If that were the case where the class member's sentences were commuted, then again, I think we would be in a distinct situation, similar to Judge Kelly's hypothetical, where they were serving sentences other than what this class is serving. From the beginning, yeah, right. I suppose, yeah, sorry, go ahead. That distinction is critical. The fact that the juvenile class is serving mandatory life without parole sentences, and that Graham and Miller have said that for juveniles serving these sentences, they must be given a meaningful opportunity for release that's based on demonstrated maturity and rehabilitation, which necessarily implicates due process rights in the parole review process that the typical adult inmate in the state of Missouri does not enjoy. I want to touch briefly on... Wait, could you address why the answer would be any different in the commutation example or the resentencing example if the premise of your position is that it's not a lawful sentence with this kind of parole system? Well, the sentences were invalidated by Miller. That's uncontested in the record. And in order to cure that, as the Montgomery Court pointed out, states could be sentenced or they could offer parole. And that parole opportunity, as Graham and Miller require, must be meaningful and realistic. Now, for an individual who is under 18 at the time of the offense and is sentenced to a parolable life sentence under a discretionary sentencing scheme, their situation would fall outside the Miller case because Miller dealt with a mandatory imposition of life without parole sentences for juvenile homicide offenders. What if the opportunity for parole under that sentence was not meaningful under your definition? Again, I think that would be a different case. As I said, there are a number of courts in other district courts and other state courts which have applied the Miller mandate to parole proceedings for juveniles serving life with parole, including the Bonilla case out of Iowa Supreme Court in 2019, the Flores v. Stanford case out of the Southern District of New York, and the Hogan case out of the District of Maryland in 2017. And even Hayden v. Keller. So a number of cases have applied Graham and Miller to situations where there's parole review for a juvenile offender sentenced to life with parole. But the court needn't go that far to affirm the district court order here because that's not the situation that the juvenile class finds themselves in. Now the state argues that its typical parole process complies with Miller because all the state has to do is make the juvenile class parole eligible and regardless of what that opportunity looks like, regardless of what the process looks like, how decisions are rendered. Under this argument, the state could hold juvenile parole hearings where not a single class member is granted parole or where every single class member is denied parole because they were juvenile or because of what they ate for breakfast. Miller's mandate would not permit that. It does not stop at the parole hearing door. And here the parole process that would be afforded to these juvenile offenders typically cannot be what the Supreme Court had in mind when it offered parole opportunity as a quote-unquote Miller fix. Hearings are shrouded in secrecy. They are short. The majority of the hearings is focused on the facts of the crime, not maturity and rehabilitation. The board action sheets, which are at the sealed appendix, page 863 through 878, contain no substantive notations regarding youth and immaturity, and the class members have little to no ability to present mitigating evidence. For example, at Mr. Rowland's hearing, his sole delegate that he was allowed to have in the room was his older sister who knew him since he was a baby and would have been a wealth of information about who Mr. Rowland was at the time of the crime and how he had changed over time. But when it was her opportunity to speak at the hearing, she asked if she could speak to anything and was told, no, you can only speak to support upon release. That's a consistent rule that was applied across the class in these cases. They also offer a far remote chance of release, and the board renders decisions that are arbitrary and subjective, supplying decision notices on admittedly bare bones and boilerplate notice forms. The hearings themselves are informal, but make no mistake, they're adversarial. Prosecutors are invited to and regularly do appear at these hearings, as do victims or victims' representatives. They often make statements in opposition for release, and they can even make such statements outside the presence of the inmate. And the backdrop to all of this is an atmosphere where at least one board member and parole analyst felt that they could play literal word games during parole hearings. As we point out in our briefs, the Western District Court of Missouri is not the only court to have found a liberty interest in a meaningful opportunity for parole. So this is far from the radical expansion that the state argues it to be. And the court notes that although, as Mr. Crane pointed out, Graham stopped short of guaranteeing parole, it does provide the juvenile offender with substantially more than the possibility of parole or, as Greenholz characterized it, a mere hope of parole. It creates a categorical entitlement to demonstrate maturity and reform, to show that they're fit to rejoin society, and to have a meaningful opportunity for release. And so, as pointed out in the Bonilla decision, page 776, unlike an adult who under Greenholz is entitled to parole only as a matter of mere legislative grace, a juvenile lifer under Graham and Miller in Montgomery is, quote, constitutionally entitled to receive a meaningful opportunity to demonstrate maturity and rehabilitation. Counsel, suppose a board was indeed satisfied that the Miller criteria had been satisfied and that this juvenile was a person who had shown himself to use a shorthand to be redeemable. Would that entitle the juvenile to a parole date? Or could the date still be denied on the grounds, say, for instance, of the heinousness of the offense? Well, Your Honor, the Supreme Court's precedent regarding extreme sentencing of youth emphasizes that focus must be on maturity and rehabilitation and the mitigating qualities of youth. And so, the focus should be on the use of the offender. I think what you're suggesting is what I may have suggested earlier, that there's some kind of thumb on the scale or presumption in favor of the juvenile here, but I'm not sure exactly how to measure it or describe it. Well, the Miller court, Judge Arnold, notes that great weight, that's the phrase they use, great weight, ought to be given to the mitigating qualities of youth. And there are some cases, I believe the Flores v. Stanford case out of the Southern District of New York, that indicates that if a juvenile has demonstrated maturity and reform, then he should be released on parole. You're correct to point out that although this was touched on briefly in plaintiff's expert report, it wasn't dealt with directly by the district court and the district court didn't make any conclusion about a presumption of release. So, that issue is not before the court on appeal. I have a question that might be related. It relates to the Graham case. You recall that in Graham, the petitioner conceded that a sentence of 40 years without the possibility of parole probably would be constitutional for a non-homicide offense. So, assuming that a sentence of 40 years without parole would be constitutional for a first-degree murder offense, wouldn't these claims fail because the Constitution doesn't require any sort of parole process until they serve 40 years? Well, the phrase meaningful opportunity for release has not just to do with how realistic that opportunity is and at what point in time the opportunity is offered to the juvenile offender, but also what that process looks like. Substantive rights necessarily carry with them some procedural aspects in order to ensure... I see I'm over time, if I could just finish. Yes, but could you address when the substantive opportunity takes hold? I mean, does the state have to allow parole opportunity after 5 years or after 10? When does this meaningful opportunity requirement kick in? Well, here in the state of Missouri, the state through Senate Bill 590 is offered to provide that opportunity after 25 years being served on the length of that parole sentence. But that could be just legislative grace that isn't required by the Constitution. So I'm trying to nail down when the Constitution requires the provision of a meaningful opportunity. Well, Your Honor, Miller and Montgomery don't directly answer at what point that opportunity ought to be provided. However, when that opportunity is provided, it must be meaningful, it must be realistic, and it must focus on maturity and rehabilitation. Here, that opportunity is provided at the earliest, after 25 years of incarceration, and it's not meaningful, and it's not realistic, and it doesn't focus on maturity and rehabilitation. So we ask that the court affirm the district court order, except as to the juvenile class point on cross-appeal. What did the Wyoming statute, which I think Montgomery cited, what did it have in it that indicated how long a person had to wait before asking for parole? The Wyoming statute offered parole review after 25 years. Okay, that's what it's called. My understanding is it did not impose any other limitations on the discretion of the parole board in rendering those decisions, which is contrary to what Missouri state law does provide. Right, thank you. Thank you. All right, thank you for your argument. Mr. Crane, we'll hear from you in rebuttal. Thank you, Your Honor. All three of the judges have seized on one of the key reasons that we know Miller doesn't apply outside the sentencing context, and that's because this court doesn't review Missouri's specific state legislative choices and how to remedy these sentences, right? So we could have commuted the sentences. We could legislatively commute the sentences. We could have re-sentenced them. The legislature could have authorized a mandatory punishment on re-sentence, but none of those things matter. What matters is whether the sentence itself is constitutional. Now, as to Judge Carlton's point, Missouri could have authorized life without parole as the only punishment for a first-degree murder and re-sentenced all of these juveniles in a situation where that was the punishment they would get, life with parole. What would be the point of presenting mitigating evidence at that hearing? Because they're not facing the possibility of life without parole. They're facing only one sentence, life with parole. And if that was the sentence, it would be constitutional. Miller says nothing about what would happen if you sentenced a juvenile to constitutional sentence of life with parole. And at those parole hearings, there's no reason to think, from Miller, Montgomery, or Graham, that there would be anything different than a normal parole offender. And, in fact, to get to that point, my opponent has to read into case law words that aren't there. She said Montgomery says states can extend parole review to offenders, but that review has to be meaningful and realistic. But nowhere in Montgomery does it apply meaningful and realistic to the parole process states will use. That's the word it uses for an opportunity for release at sentencing. Of course, sentencing must keep in mind that juveniles must be entitled to a later meaningful opportunity for release. And it can't take that away without applying the process that Miller lays out, without strongly considering whether we should ever take away this juvenile's chance for release back into society. But that's simply not the issue here. We're considering whether 40-year-old men and some women have deserved release right now, or whether they should wait five years. That's what we're considering in this case, not whether we should take away their chance to ever be released again. And the other side went through and listed out all of the parole procedures they don't like, but they're parole procedures that have been upheld against adult offenders time and time again. Now, I understand that they don't believe this is the most transparent or the best opportunity for these offenders to show that they've been rehabilitated, but it is not meaningless and it's not unrealistic. The record strongly shows that these offenders can present evidence in writing. They can converse with the parole board. They can tell them that they should be released. The parole board will look at their records from prison, the programs they've completed, and the parole board does grant relief pretty often. It's not unrealistic to consider that these offenders will be released before the end of their lifetime, and that's what they're entitled to. They're not entitled to some entitlement that must be read into Miller and Montgomery that would give them a leg up over every other offender in the system. That's simply not what those cases say. Thank you. That's all my time. Very well. Thank you for your argument. Thank you to both counsel. We appreciate your appearing by video conference for this session. The case is submitted and the court will file an opinion in due course. That concludes the argument session for this afternoon. The court will be in recess until further call at the docket.